IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Joseph Roger Rudd, | ) | C/A No.: 1:14-3125-JMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

I.    Relevant Background

    A.    Procedural History

On July 2, 2009, Plaintiff filed applications for DIB and SSI in which he alleged his disability began on August 14, 2007. Tr. at 75, 151–53, 154–60. His SSI application

was denied initially because of his wife's income.[1] Tr. at 79–86. His DIB claim was denied initially and upon reconsideration. Tr. at 87–90, 92–93. On April 6, 2011, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Thomas G. Henderson. Tr. at 44–74 (Hr'g Tr.). The ALJ issued an unfavorable decision on April 14, 2011, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 26–43. Subsequently, the Appeals Council granted Plaintiff's request for review and issued a new decision, which became the final decision of the Commissioner for purposes of judicial review. Tr. at 6–14. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on August 2, 2014. [ECF No. 1].

>    B.    Plaintiff's Background and Medical History

>       1.    Background

Plaintiff was 47 years old at the time of the hearing. Tr. at 37. He completed high school and obtained vocational training as a welder and a truck driver. Tr. at 182. His past relevant work ("PRW") was as a truck driver, a carbon setter, and a pot builder. Tr. at 70. He alleges he has been unable to work since August 14, 2007. Tr. at 75.

>       2.    Medical History

On November 8, 2006, Plaintiff presented to Richard M. Gordon, M.D. ("Dr. Gordon"), complaining of cervical pain. Tr. at 272. Dr. Gordon recommended a trigger point injection, but Plaintiff declined it. *Id.* On November 20, 2006, he reported to Dr. Gordon that he had experienced some improvement in his symptoms. Tr. at 273.

---

[1] The record does not indicate Plaintiff appealed the non-medical denial for SSI. Therefore, the claim proceeded as one for DIB only.

Plaintiff returned to Dr. Gordon on June 20, 2007, and endorsed continued left periscapular pain. Tr. at 274. He reported increased neck pain with left lateral rotation and intermittent numbness and tingling, radiating down the posterior lateral aspect of his left arm and into the fingers of his left hand. *Id.* Tinel's and Phalen's tests were positive, but Plaintiff had normal strength and no sensory deficits. *Id.* Dr. Gordon indicated Plaintiff had neck and left upper extremity pain and sensory disturbance. *Id.* He referred Plaintiff for a cervical MRI. *Id.*

Plaintiff followed up with Dr. Gordon on June 27, 2007, following the MRI. Tr. at 276. Dr. Gordon indicated the MRI revealed a fairly large disc osteophyte extrusion at C5-6; neural foraminal narrowing bilaterally, more pronounced on the left; a small disc osteophyte complex at C6-7; and impingement on the right and left at the C6 nerve root and left at the C7 nerve root. *Id.* He prescribed Prednisone and cervical traction and instructed Plaintiff to return the following week for electromyography ("EMG") and nerve conduction studies ("NCS") to evaluate for left C6 and C7 radiculopathy. *Id.*

On July 5, 2007, Dr. Gordon indicated the EMG/NCS did not indicate acute or chronic left cervical radiculopathy or peripheral nerve entrapment. Tr. at 277. Dr. Gordon suggested Plaintiff had either left C6 or C7 radiculitis and stated that the fact that the EMG/NCS was negative only meant that there was no structural compromise to the cervical nerve roots, but did not rule out irritation due to structural changes. *Id.* He recommended a fluoroscopically-guided left C5-6 epidural steroid injection. *Id.*

On July 30, 2007, Dr. Gordon indicated Plaintiff had some improvement after the epidural steroid injection and went jet skiing the week before. Tr. at 280. Plaintiff

indicated some of his symptoms had returned, but he was reluctant to proceed with another epidural steroid injection for financial reasons. *Id.* Dr. Gordon prescribed Voltaren and instructed Plaintiff to follow up in a month. *Id.*

On August 15, 2007, Plaintiff presented to his primary care physician Charles F. Way, M.D. ("Dr. Way"), for evaluation of pain in his neck and left shoulder following a motor vehicle accident the day before. Tr. at 331. Plaintiff endorsed pain with left lateral twisting motion and was tender to palpation of the posterior aspect of his left shoulder muscles. *Id.* The examination was otherwise normal. *Id.* Dr. Way diagnosed cervical and shoulder strain, prescribed physical therapy, and instructed Plaintiff to use Tylenol as needed. *Id.*

On August 16, 2007, Plaintiff reported to Dr. Way that physical therapy produced only minimal symptom improvement. Tr. at 330. Dr. Way indicated Plaintiff should obtain a physical medicine consultation. *Id.*

On August 21, 2007, Plaintiff reported to Dr. Gordon that he was involved in a second motor vehicle accident. Tr. at 281. Plaintiff complained of worsened symptoms, including neck and left trapezial ridge pain, sensory disturbance in the lateral aspect of his left arm to the elbow, and constant left hand numbness. *Id.* He also reported vague facial numbness, occasional headaches, and increased eye pain. *Id.* Dr. Gordon observed Plaintiff to have normal cervical lordosis, forward flexion, extension, and left-right lateral rotation. *Id.* He had normal tone of his cervical paraspinals and normal shoulder abduction. *Id.* He had slight give-way weakness of the left deltoid and biceps and decreased sensation in the left C5, C6, and C7 dermatomes. *Id.* Dr. Gordon indicated he

4

would consult with Dr. Wooten and let Plaintiff know whether he should proceed with another C5-6 epidural steroid injection. *Id.* Dr. Gordon completed an attending physician's statement in which he indicated Plaintiff had cervical spondylosis and radiculitis and symptoms that included left arm pain, neck pain, and numbness. Tr. at 287. He indicated Plaintiff had objective findings that included decreased left shoulder girdle strength and decreased left upper extremity sensation. *Id.* He limited Plaintiff to no climbing and no lifting over 20 pounds. *Id.* He stated Plaintiff had moderate limitation of functional capacity and was capable of clerical/administrative (sedentary) activity, but was totally disabled from his regular occupation. Tr. at 288.

Plaintiff presented to Dr. Way with cervical pain on October 18, 2007. Tr. at 329. Plaintiff indicated to Dr. Way that he would consider surgery and Dr. Way suggested Plaintiff follow up with him as needed. *Id.*

A cervical MRI on December 5, 2007, indicated evidence of multilevel cervical spondylosis with potential for nerve root compression at multiple sites and spinal cord compression, as well as probable myelopathy at C5-6. Tr. at 338–39.

Donald R. Johnson, II, M.D. ("Dr. Johnson") performed anterior cervical discectomy and interbody fusion at C5-6 on February 5, 2008. Tr. at 300–01.

On July 25, 2008 Plaintiff presented to Charleston Neuroscience Institute Retina Consultants with complaints of blurred and distorted vision, head numbness with left-sided strain, and lazy eye. Tr. at 312. The record indicates he had a history of closed-head trauma. *Id.* John B. Kerrison, M.D., diagnosed Plaintiff with posterior vitreous

detachment of the left eye and referred Plaintiff to Jeffrey Pockl, O.D. ("Dr. Pockl") in Holly Hill for general eyecare and an adjustment to his glasses. Tr. at 313, 324.

A cervical MRI on February 10, 2009, showed anterior cervical discectomy and fusion from C5 to C6; disc osteophyte complex mildly flattening the left anterior aspect of the cord with mild canal stenosis at C4-5; mild canal stenosis and bilateral neural foraminal narrowing at C5-6; minimal disc osteophyte complex with mild canal stenosis at C6-7; and disc osteophyte complex at T3-4, mildly flattening the right anterior aspect of the cord. Tr. at 337.

Plaintiff presented to Dr. Way for a Department of Transportation physical on March 13, 2009. Tr. at 327. Dr. Way indicated Plaintiff was "without symptoms." *Id.* He observed Plaintiff to have normal sensory and motor exams. *Id.* He gave Plaintiff a three-month certification and instructed him to follow up with his regular physician for elevated blood pressure. *Id.*

On June 16, 2009, Dr. Johnson indicated the recent EMG/NCS revealed acute on chronic left C6 radiculopathy. Tr. at 332. Dr. Johnson indicated Plaintiff may be a candidate for C5-6 posterior decompression, but would need a second opinion because he was reluctant to provide further surgery. *Id.* He referred Plaintiff to John Glaser, M.D., at MUSC. *Id.*

On July 1, 2009, Dr. Johnson wrote Plaintiff had been unable to obtain a second opinion. Tr. at 333. Plaintiff agreed to allow Dr. Johnson to consult with Dr. Netherton to determine whether they should proceed with posterior decompression surgery or implant a stimulator. *Id.*

Plaintiff visited William Blane Richardson, M.D. ("Dr. Richardson"), for an initial pain management consultation on July 21, 2009. Tr. at 340–42. He complained of pain in his left upper extremity that radiated through his arm and affected his fingers. Tr. at 340. He described the pain as sharp, stabbing, dull, and achy with episodes of throbbing, tingling, numbness, pressure, and burning. *Id.* He indicated his pain affected his sleep, appetite, physical activity, concentration, emotions, and social relationships. *Id.* Plaintiff had decreased range of motion ("ROM") with neck flexion, extension, and lateral rotation. Tr. at 341. He had positive facet loading of the cervical region, left greater than right. *Id.* The examination was otherwise normal. *Id.* Dr. Richardson diagnosed post-laminectomy pain syndrome of the cervical spine and cervical radiculitis in the left upper extremity. *Id.* He prescribed Lyrica and gave Plaintiff information on spinal cord stimulator implantation. Tr. at 341–42.

Plaintiff underwent trial placement of a spinal cord stimulator on September 1, 2009. Tr. at 349–50. Approximately six weeks later, Dr. Richardson implanted a permanent spinal cord stimulator. Tr. at 347.

Plaintiff followed up with Dr. Richardson on January 28, 2010, and reported some pain in his neck and shoulder with episodic headaches. Tr. at 381. He rated his pain as a seven of 10. *Id.* He indicated he had stopped taking Lyrica. *Id.* He had decreased ROM of neck flexion and extension, but his examination was otherwise normal. *Id.* Dr. Richardson indicated Plaintiff should restart and increase Lyrica from 50 milligrams to 75 milligrams twice daily. Tr. at 382. He indicated Plaintiff had some side effects associated with his use of Tramadol. *Id.* He gave Plaintiff samples of Zanaflex for muscle

pain and increased his dosage of Clonidine. *Id.* Dr. Richardson restricted Plaintiff from lifting more than 20 pounds and raising his arms over his head for an extended period of time. *Id.* He indicated "[o]therwise, the majority of his restriction is what he can tolerate in terms of pain level." *Id.* Dr. Richardson indicated Plaintiff's stimulator would be reprogrammed in an attempt to give him better coverage in his neck and shoulder area, but he indicated it was unlikely to work. *Id.*

On February 25, 2010, Plaintiff complained to Dr. Richardson that his pain was worsened by bending, twisting, and moving his neck. Tr. at 379. He reported his pain as a seven of 10 and stated he was having cramps along the upper extremity and into the shoulder with episodic headaches. *Id.* Plaintiff indicated Elavil was no longer providing relief from headaches. *Id.* Plaintiff had decreased ROM in his neck and left upper extremity, but normal strength and grip strength. *Id.* Dr. Richardson assessed cervical spondylosis, cervical radiculitis, post-laminectomy pain syndrome of the cervical spine, and myofascial pain in the cervical and trapezius regions. *Id.* He gave Plaintiff samples of Amrix and referred him for a physical therapy evaluation. *Id.*

Plaintiff presented to neurologist Ashley D. Kent, M.D. ("Dr. Kent"), on February 25, 2010, and complained that his headaches had worsened and become more frequent. Tr. at 409. He reported two to three bad headaches per week, problems with his left eye, and short-term memory loss. *Id.* Dr. Kent stopped Elavil, increased Plaintiff's dosage of Lyrica to 100 milligrams twice daily, and prescribed 50 milligrams of Pristiq daily. Tr. at 410.

On April 22, 2010, Plaintiff reported to Dr. Richardson that he was experiencing sharp pain in his left arm, shoulder, and neck that he rated as a six to seven of 10. Tr. at 377. He stated his pain was worsened by sitting and indicated he was not getting much sleep. *Id.* Dr. Richardson observed Plaintiff to have normal motor strength in his bilateral upper extremities. Tr. at 378. Plaintiff's gait was normal, but he had cervical tenderness. *Id.* Dr. Richardson increased Plaintiff's dosage of Ultram and decreased his dosage of Clonidine. *Id.*

On April 22, 2010, Plaintiff reported to Dr. Kent that he continued to have four to five bad headaches per month. Tr. at 418. He endorsed increased pain on the left side of his head when bending forward. *Id.* He also complained of dizziness, blurred vision, and upset stomach. *Id.* Dr. Kent increased Plaintiff's Lyrica dosage to 150 milligrams twice daily. Tr. at 419.

Plaintiff was examined by Suzanne Livengood, PA-C ("Ms. Livengood"), in Dr. Richardson's office on April 22, 2010. Tr. at 470. He complained of pain in his left arm, shoulder, and neck and rated his pain as a six to seven of 10. Tr. at 470. Plaintiff reported dizziness and stated his pain was interrupting his sleep and worsened by sitting. *Id.* Ms. Livengood observed tenderness in Plaintiff's cervical spine, but noted no other abnormalities. *Id.*

On May 20, 2010, Plaintiff reported having a better month, but stated he still had pain in his left thumb, arm, shoulder, and neck. *Id.* He described the pain as aching and stabbing and rated it as a three of 10. *Id.* Ms. Livengood indicated Plaintiff had an antalgic gait, but noted no other abnormalities. *Id.* Plaintiff complained of stomach pain,

and Ms. Livengood prescribed Nexium. *Id.* She indicated she would consider a possible left trigeminal block in the future. *Id.*

On June 17, 2010, Plaintiff indicated his pain was worsened by moving around and doing things and improved by rest, medications, and his stimulator. Tr. at 463. Ms. Livengood observed Plaintiff to have tenderness in his left cervical spine and shoulders. *Id.* Plaintiff received a left trigeminal block for trigeminal neuralgia, cervical spondylosis, and intractable migraines. Tr. at 464.

On August 16, 2010, Plaintiff reported his pain to be a four of 10 and indicated he continued to have headaches and pain in his left thumb, arm, shoulder, and neck. Tr. at 460. Plaintiff indicated his headaches returned only two weeks after the left trigeminal block. Tr. at 461. Ms. Livengood observed Plaintiff to have four of five grip strength bilaterally, but to demonstrate no other abnormalities on examination. Tr. at 460. Ms. Livengood continued Plaintiff's medications and instructed him to follow up in October. *Id.*

Plaintiff reported to Ms. Livengood that he felt a little better on October 1, 2010. Tr. at 457. He rated his pain as a three of 10, but continued to report headaches and pain in his left thumb, shoulder, arm, and neck. *Id.* Plaintiff had four of five musculoskeletal strength, equal grip strength, and normal gait. *Id.* Ms. Livengood continued Plaintiff's medications and instructed him to follow up in 12 weeks. *Id.*

Plaintiff complained of headaches and pain in his left thumb, shoulder and arm, neck, and hands. Tr. at 454. He described his pain as constant and crushing, but rated it as a four of 10. *Id.* He indicated it was worse in the morning than at night. *Id.* He also

10

complained of dizziness and aching in his hands. *Id.* Ms. Livengood recommended Plaintiff see a neurologist, but Plaintiff stated he could not afford to do so. *Id.* Ms. Livengood reduced Plaintiff's dosage of Clonidine and Lyrica and instructed him to follow up in four weeks. *Id.*

On January 20, 2011, Plaintiff reported headaches and pain in his left thumb, arm, shoulder, and neck. Tr. at 452. He rated his pain as a four of 10. *Id.* Plaintiff's bilateral grip strength was reduced at four of five. Tr. at 453. Ms. Livengood refilled Plaintiff's medications and instructed him to return for treatment in 12 weeks. *Id.*

C.     The Administrative Proceedings

1.     The Administrative Hearing

a.     Plaintiff's Testimony

At the hearing on April 6, 2011, Plaintiff testified he stopped working in August 2007, when he was injured in a second wreck after having sustained primary injuries in an earlier accident. Tr. at 48–49. He indicated he was unable to perform other work because of his pain. Tr. at 49. He denied having worked after August 14, 2007, but admitted he renewed his commercial driver's license in 2009 because he thought he would get better. *Id.*

Plaintiff testified he was terminated from his job at Clo Industries after he had the first accident. Tr. at 52. He stated he injured his neck and the left side of his head and developed blurred vision. *Id.* He indicated he return to work in February 2007, as a self-employed truck driver, but was injured again in August, when a car lost control on a bridge and ran into the side of the container he was pulling. Tr. at 52–53.

11

Plaintiff testified his headaches intensified after the second accident. Tr. at 55. He stated he underwent surgery in February 2008, which reduced his pain to some extent. *Id.* He indicated he participated in a trial and had a permanent spinal cord stimulator implanted in 2009. Tr. at 55–56.

Plaintiff testified he saw Dr. Richardson and his family doctor regularly. Tr. at 50. He indicated he took Lyrica twice daily, Tramadol three times daily, and Clonidine once daily. Tr. at 57.

Plaintiff testified he experienced daily headaches and migraines two to three times per week. Tr. at 60. He indicated he still had blurred vision. Tr. at 64.

Plaintiff testified standing up affected his neck and lying flat increased his pain. Tr. at 58. He indicated he could sit in a non-reclined chair for 30 to 45 minutes before he experienced increased pain in his neck and on his left side. *Id.* Plaintiff stated he could stand in one position for 45 minutes to an hour at a time. Tr. at 59. He testified he could walk for 15 to 20 minutes at a time. *Id.* He stated lifting a gallon of milk increased his pain. Tr. at 61. He indicated he had difficulty bending and climbing stairs and ladders. Tr. at 61–62. He endorsed some difficulty remembering and concentrating. Tr. at 63.

Plaintiff testified he lived in a house with his wife and indicated his son came home from college to stay with them every other weekend. Tr. at 49–50. He stated he watched reality television and read automobile magazines during a typical day. Tr. at 50, 63. He indicated he sometimes walked around his yard. *Id.* He stated he spent most of the day in a recliner and had the least pain while lying in that position. Tr. at 57. Plaintiff indicated he could engage in activities for one to two hours at time. Tr. at 62. He stated

he was able to drive short distances. Tr. at 67. He indicated he tried to attend church weekly, but did not always make it because of his pain. Tr. at 68. He stated he visited family and friends once or twice a week. *Id.* Plaintiff testified he helped his wife around the house by washing small loads of laundry and cleaning a few dishes. Tr. at 67. He stated his wife did the heavy cleaning and grocery shopping. *Id.*

b.    Vocational Expert Testimony

Vocational Expert ("VE") Kristen Cicero reviewed the record and testified at the hearing. Tr. at 70–72. The VE categorized Plaintiff's PRW as a truck driver, *Dictionary of Occupational Titles* ("*DOT*") number 905.663-014, as medium per the *DOT*, but heavy as performed, and semi-skilled with a specific vocational preparation ("SVP") of four; a carbon setter, *DOT* number 519.667-010, as heavy and semi-skilled with an SVP of three; and a pot builder, *DOT* number 826.684-022, as heavy and semi-skilled with an SVP of 4. Tr. at 70. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform light work with occasional postural restrictions, but could not climb, bend, or perform overhead work and must avoid work hazards. Tr. at 71. The VE testified that the hypothetical individual would be unable to perform Plaintiff's PRW. *Id.* The ALJ asked whether there were any other jobs in the regional or national economy that the hypothetical person could perform. *Id.* The VE identified light and unskilled jobs with an SVP of two as a cashier, *DOT* number 211.462-010, with 3.5 million jobs nationally and approximately 61,000 jobs in the state; a cafeteria attendant, *DOT* number 311.677-010, with 527,000 jobs nationally and approximately 9,200 jobs in the state; and a laundry

sorter, *DOT* number 361.687-014, with approximately 220,000 jobs nationally and 3,400 jobs in the state. *Id.*

The ALJ asked the VE to further assume the hypothetical individual was limited to simple, routine tasks. *Id.* He asked the VE if that would affect the jobs identified in response to the earlier hypothetical. *Id.* The VE testified that it would not because all of the jobs previously identified were unskilled jobs. Tr. at 71–72.

The ALJ next asked the VE to assume the hypothetical individual would miss up to four days of work per month. Tr. at 72. The VE testified the further restriction would preclude the individual from performing all jobs in the national economy. *Id.* The ALJ asked the VE to indicate the normal tolerance of absences in the workplace. *Id.* The VE testified that employers would generally tolerate one day of absence per month. *Id.*

2.    The ALJ's Findings

In his decision dated April 14, 2011, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
2.    The claimant has not engaged in substantial gainful activity since August 14, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).
3.    The claimant has the following severe impairments: cervical spondylosis with cervical radiculitis and headaches (20 CFR 404.1520(c)).
4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Light exertional work requires lifting and carrying 20 pounds occasionally and 10 pounds frequently as well as an ability to sit, stand, and walk for 6 hours each in an 8-hour workday. The claimant is limited to

occasional postural activities, no climbing, no bending, no overhead work, and avoiding exposure to work hazards such as moving machinery and unprotected heights. The claimant is further limited to work involving simple routine, repetitive tasks.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on March 16, 1964 and was 43 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from August 14, 2007, through the date of this decision (20 CFR 404.1520(g)).

Tr. at 31–38.

    D.    Appeals Council Review

In its decision dated March 29, 2012, the Appeals Council made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2012. The claimant has not engaged in substantial gainful activity since August 14, 2007.

2     The claimant has the following severe impairments: cervical spondylosis with cervical radiculitis and headaches, but did not have an impairment that met or equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

3.    The claimant had the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently as well as stand, walk or sit for six hours in an eight-hour workday. The claimant was limited to occasional balancing, stooping, kneeling, crouching, and crawling. The claimant was

15

also precluded from climbing, bending, performing overhead work, as well as exposure to work hazards such as moving machinery and unprotected heights. Additionally, the claimant was limited to understanding, remembering and carrying out simple job instructions.

4. The claimant's subjective complaints are not fully credible.

5. The clamant was unable to perform his past relevant work.

6. The claimant is a younger individual with a high school education.

7. Based upon the claimant's age, education, work experience and residual functional capacity, the claimant was not disabled within the framework of Medical-Vocational Rule 202.21. The claimant was able to perform a significant number of jobs in the national economy. Examples of such jobs include cashier, with 3,500,000 jobs available in the national economy; cafeteria attendant, with 527,000 jobs available in the national economy; and laundry sorter, with 220,000 jobs available in the national economy.

8. The claimant was not disabled from August 14, 2007 through the April 14, 2011 hearing decision.

Tr. at 11.

II.     Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)      the ALJ and the Appeals Council did not follow the proper legal standard in assessing the treating physician's opinion;

2)      the ALJ and the Appeals Council did not properly consider the effects of Plaintiff's pain;

3)      the ALJ and the Appeals Council's decisions were not supported by substantial evidence; and

4)      the ALJ and the Appeals Council disregarded the portion of the VE's testimony that directed a finding that Plaintiff was disabled.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.      Legal Framework

1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such

---

[2]  The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen*

impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v.*

---

*v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

*Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is

substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.     Analysis

1.     Dr. Richardson's Opinion

Dr. Richardson completed an attending physician's statement on August 18, 2010, in which he indicated Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could sit for two hours in an eight-hour day; could stand or walk for two hours in an eight-hour day; should avoid dust, fumes, gases, extremes of temperature, humidity, and other environmental pollutants; could never climb stairs or ladders, balance, bend or stoop, reach, or work with or around hazardous machinery; could rarely push and pull with arm or leg controls; could occasionally perform gross and fine manipulation and operate motor vehicles; and would likely be absent from work more than four days per month. Tr. at 448. Dr. Richardson indicated Plaintiff's restrictions were supported by his use of narcotic medications that impaired his judgment; his frequent, persistent migraines; his impaired vision; and his impaired ability to concentrate. *Id.* Dr. Richardson provided a second statement on February 25, 2011, that included the same restrictions. Tr. at 450.

Plaintiff argues the ALJ ignored the portion of Dr. Richardson's opinion that suggested he was limited to working only four hours per day. [ECF No. 13 at 4–5]. He maintains that, although the Appeals Council addressed that portion of Dr. Richardson's

opinion, it picked only evidence that supported the notion that Plaintiff was able to work and ignored all contrary evidence. *Id.* at 5.

The Commissioner argues the ALJ examined the entire record to determine Plaintiff's RFC. [ECF No. 15 at 13]. She maintains that substantial evidence supports the Appeals Council's determination that Dr. Richardson's opinions were inconsistent with the record. *Id.* at 15. She points out that the Appeals Council specified particular evidence in Dr. Richardson's treatment notes that was inconsistent with his opinion. *Id.* She further argues the ALJ appropriately considered evidence regarding Plaintiff's pain, including Plaintiff's self-reported pain levels and his physicians' observations. *Id.* at 17.

The opinion of a treating physician is entitled to deference. SSR 96-2p. If a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96-2p; *see also* 20 C.F.R. § 404.1527(c)(2). If persuasive contradictory evidence exists, the ALJ may decline to accord controlling weight to the treating physician's opinion. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, even if the ALJ determines a treating physician's opinion is not entitled to controlling weight, the treating physician's opinion may still support a finding that the claimant is disabled and the ALJ is required to consider the opinion, along with all other medical opinions in the record, based on the factors set forth in 20 C.F.R. § 404.1527(c). SSR 96-2p. The factors to be considered include the following: examining relationship; treatment relationship, including length of treatment relationship and frequency of examination and nature and extent of treatment relationship; supportability of the opinion based on the provider's

21

treatment record; consistency with the record as a whole; specialization of the medical source; and other factors. 20 C.F.R. § 404.1527(c); *see also Johnson*, 434 F.3d at 654. In all unfavorable and partially-favorable decisions and in fully-favorable decisions based in part on treating sources' opinions, the ALJ must specify the weight accorded to the treating source's opinion, cite reasons for the weight accorded, and support her decision with evidence in the case record. SSR 96-2p. If the Appeals Council grants review, it must follow the same rules for considering opinion evidence as ALJs. 20 C.F.R. § 404.1527(e)(3).

The ALJ wrote that he gave significant weight to Dr. Richardson's opinions, finding they were "relatively consistent with the medical evidence," but he rejected Dr. Richardson's indication that Plaintiff would likely miss more than four days of work per month. Tr. at 35.

The Appeals Council granted review after finding the ALJ's decision did not adequately address opinion evidence from Dr. Richardson. Tr. at 147. The Appeals Council indicated it "carefully considered opinion evidence from Dr. Richardson, a treating source." Tr. at 10. It found that Dr. Richardson's opinion was "inconsistent with the longitudinal record," including the opinions of the state agency medical consultants and Dr. Richardson's treatment notes, which revealed normal gait and only once indicated Plaintiff's pain was exacerbated by sitting. *Id.*

The undersigned recommends the court find the Commissioner did not adequately evaluate Dr. Richardson's opinion. Because the Appeals Council granted review, it was required to specify the weight accorded to the treating source's opinion, cite reasons for

the weight accorded, and support its decision with evidence in the case record as required by 20 C.F.R. § 404.1527(e)(3) and SSR 96-2p. Unlike the ALJ who gave Dr. Richardson's opinion significant weight, the Appeals Council did not specify the weight it gave to the opinion. It found Dr. Richardson's opinion to be "inconsistent with the longitudinal record," but only explained why it found the sitting and standing restrictions to be inconsistent and failed to consider the other restrictions Dr. Richardson set forth. *See* Tr. at 10. Thus, the Appeals Council did not evaluate the entire opinion or specify the weight accorded to it as required by 20 C.F.R. § 404.1527(e)(3) and SSR 96-2p.

Although the Appeals Council addressed the element of Dr. Richardson's opinion the ALJ ignored, it failed to support its conclusion with substantial evidence. The Appeals Council looked only to evidence that directly pertained to Plaintiff's gait[4] and ability to sit. While Plaintiff generally demonstrated normal gait, gait is only pertinent to a general ability to walk without displaying abnormal movement. If Plaintiff had alleged he was unable to stand without falling or unable to walk a short distance, the Appeals Council's observation would make sense, but he alleged he could stand in one position for 45 minutes to an hour and walk for 15 to 20 minutes at a time, and Dr. Richardson opined that Plaintiff could not stand for more than two hours in an eight-hour period. *See* Tr. at 59, 448. Plaintiff's limitations pertained to his stamina, as opposed to his manner of movement. Therefore, the Appeals Council's conclusion that Plaintiff's normal gait was inconsistent with Dr. Richardson's opinion that he could stand and walk for no more than

---

[4] Gait is defined as a manner of walking or moving on foot. "Gait," *Merriam-Webster.com*, 2015. Web. 8 July 2015.

two hours out of an eight-hour workday makes little sense. Furthermore, while the Appeals Council indicated Plaintiff only once complained of an impaired ability to sit, the undersigned's review of the record reveals two complaints to his medical providers of increased pain while sitting. *See* Tr. at 377, 470. Plaintiff testified that he was able to sit in a normal position for 30 to 45 minutes at a time, but tailored his daily activities so that he did not have to sit in a non-reclined position for extended periods. *See* Tr. at 57, 58. The evidence is not out of line with Dr. Richardson's opinion that Plaintiff could sit for two hours out of an eight hour workday where it shows that Plaintiff generally limited his sitting to accommodate his pain. Because Plaintiff followed a similar routine from day-to-day, it is not unusual that he would have only complained to his doctors on two occasions of increased pain while sitting for extended periods. The Appeals Council also ignored other evidence in Dr. Richardson's opinion that supported his general opinion that Plaintiff was unable to complete an eight-hour workday, including indications of impaired judgment as a result of narcotic medication use, pain due to frequent and persistent migraines, and impaired ability to concentrate. *See* Tr. at 448, 450. In light of the foregoing, the undersigned recommends the court find the Appeals Council did not provide adequate reasons for finding Dr. Richardson's opinion to be inconsistent with the longitudinal record.

Furthermore, the Appeals Council neglected to confer appropriate deference to Dr. Richardson's opinion as that of a treating physician or to evaluate his opinion pursuant to the framework set forth in 20 C.F.R. § 404.1527(c). Even if this court were to accept the Appeals Council's conclusion that Dr. Richardson's opinion was inconsistent with his

records and those of the state agency medical consultants as appropriate reasons not to confer controlling weight on Dr. Richardson's opinion, the Appeals Council's consideration of Dr. Richardson's opinion remains inadequate. The Appeals Council neglected to discuss two factors that weighed heavily in support of Dr. Richardson's opinion, including his medical specialization and his treatment relationship with Plaintiff. *See* Tr. at 10. Dr. Richardson oversaw Plaintiff's pain management from July 2009 through February 2011. *See* Tr. at 340–45, 362–68, 377–90, 449–72. He implanted Plaintiff's spinal cord stimulator and prescribed narcotics and other medications in an attempt to manage Plaintiff's pain. *See id.* Despite the fact that the Social Security Administration ("SSA") accords greater weight to the opinions of specialists about medical issues relating to their areas of specialty, the Appeals Council overlooked elements of Dr. Richardson's opinion about Plaintiff's limitations as a result of pain, without regard for Dr. Richardson's expertise in the areas of pain medicine and anesthesiology. *See* 20 C.F.R. §§ 404.1527(c)(5); *see also* Tr. at 448–50, 474. In light of these shortcomings, the undersigned recommends a finding that the Appeals Council did not properly evaluate the opinion of Plaintiff's treating physician.

### 2.    Effects of Pain

Plaintiff argues the Appeals Council ignored evidence regarding the disabling effects of his pain. [ECF No. 13 at 5]. The Commissioner contends the ALJ permissibly looked to and found no objective signs to support Plaintiff's allegations of severe pain. [ECF No. 15 at 18].

Allegations of pain or other symptoms in the absence of medical signs and laboratory findings demonstrating the existence of a medically-determinable impairment cannot be the basis for a disability finding. SSR 96-7p. The ALJ should only consider the intensity, persistence, and functionally-limiting effects of symptoms after a claimant has established the existence of a medically-determinable impairment. *Id.*

To determine whether a claimant is disabled the ALJ must consider all of the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). "[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record" in determining whether the claimant's statements are credible. SSR 96-7p. To assess the credibility of the claimant's statements, the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *Id.*; *see also* 20 C.F.R. § 404.1529(a). The ALJ must consider the objective medical evidence, but he cannot disregard the claimant's statements about symptoms merely because they are not substantiated by objective medical evidence. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(2). The ALJ should consider all information about a claimant's pain or other symptoms that is provided by the claimant, his treating medical sources, non-treating medical sources, and others. 20 C.F.R. § 404.1529(c)(3). Some relevant factors to be considered include

the claimant's daily activities; the location, duration, frequency, and intensity of his pain or other symptoms; any precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; any measures the claimant uses or has used to relieve his pain or other symptoms (e.g., lying flat on his back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.*

Furthermore, the ALJ must specify his reasons for the finding on credibility, and his reasons must be supported by the evidence in the case record. SSR 96-7p. The ALJ's decision must clearly indicate the weight accorded to the claimant's statements and the reasons for that weight. *Id.*

The ALJ indicated he considered Plaintiff's pain and made a credibility determination in view of 20 C.F.R. §§ 404.1529 and 416.929, SSR's 96-3p, 96-4p, and 96-7p, and the evidence of record. Tr. at 33. Although the ALJ found Plaintiff's impairment could reasonably be expected to cause some of the alleged symptoms, he concluded Plaintiff's statements about his symptoms were not credible to the extent they were inconsistent with the RFC assessment. *Id.*

The ALJ provided specific examples to support his assessment of Plaintiff's credibility. Tr. at 33–34. He explained, "the record does not substantiate the claimant's allegations as to the severely restricting nature of his alleged impairments noting that despite continued complaints of neck and upper extremity pain and headaches, the medical evidence fails to reveal that he was ever in any acute distress and examinations

27

were essentially benign (Exhibits 2F, 6F, 7F, 8F, 10F, 12F, 14F, 15F, 18F, and 19F)[.]"

Tr. at 33. He further explained "[w]hile the claimant described his pain level as a '5–10'

on a 10-point scale in July 2009 and a 7 out of a possible 10 in January 2010, he was

nonetheless described as 'not in any apparent distress' on both occasions. (Exhibits 18F

and 14F)." Tr. at 33–34. He indicated Plaintiff described his pain as a three to four of 10

in May 2010, June 2010, August 2010, October 2010, December 2010, and January 2011.

Tr. at 34. He pointed to Plaintiff's indications to his medical providers that the

medications helped and that he could manage. *Id.* The ALJ conceded that Plaintiff had a

history of cervical surgery and had undergone placement of a spinal cord stimulator, but

concluded "these procedures were relatively successful in relieving the symptoms." *Id.*

The ALJ also acknowledged that Plaintiff complained of no symptoms and Dr. Way

noted no abnormalities during Plaintiff's physical examination in March 2009. *Id.* The

ALJ referred to a treatment note from November 5, 2009, in which Plaintiff indicated his

pain had improved and neurological and musculoskeletal examinations were normal. *Id.*

The ALJ pointed out that, while Plaintiff mentioned increased pain with twisting and

reaching, he endorsed no increased pain with prolonged sitting, standing, or walking. *Id.*

The ALJ also indicated treatment notes did not corroborate Plaintiff's alleged memory

problems. *Id.* He pointed out the record did not reveal signs of muscular atrophy, strength

deficits, circulatory compromise, neurological deficits, muscle spasms, or change in

weight. *Id.* He considered a gap in Plaintiff's treatment history from February 2008 to

February 2009, found that Plaintiff failed to follow up on recommendations made by his

treating doctor, and had a history of treatment non-compliance. *Id.* Finally, he concluded Plaintiff "retained a significant range of activities of daily living." *Id.*

The Appeals Council indicated "[f]or reasons set forth in the Administrative Law Judge's decision, the Council adopts the Administrative Law Judge's finding that the claimant's subjective allegations were not fully credible." Tr. at 9.

The undersigned recommends a finding that the Commissioner failed to adequately consider Plaintiff's credibility and allegations of pain. Although the ALJ provided significant support for his credibility determination, the undersigned is unable to conclude the ALJ and Appeals Council considered the entire record because of their failure to adequately consider Dr. Richardson's opinion. *See* 20 C.F.R. § 404.1529(a), SSR 96-7p. Furthermore, while the record suggested Plaintiff had difficulty sitting in a non-reclined position and endorsed side effects from medications, neither the ALJ nor the Appeals Council considered these factors as required by 20 C.F.R. § 404.1529(c)(3). *See* Tr. at 57 (Plaintiff testified he spent most of his day in a recliner), 173 (SSA interviewer at field office observed Plaintiff to wince often during the interview, to change positions in his chair often, and to have difficulty understanding questions and remembering dates), 382 (Plaintiff endorsed side effects from Tramadol), 448 (Dr. Richardson indicated Plaintiff's narcotic pain medication affected his judgment and concentration).

The ALJ also inconsistently found that Plaintiff had no medical treatment between February 2008 and February 2009, but cited an August 2008 opinion from Dr. Johnson. *See* Tr. at 34, 35. Although the ALJ referenced Dr. Johnson's opinion as being at Exhibit 7F, which corresponds with pages 332–39 in the transcript, Dr. Johnson's opinion does

not appear in these pages. The undersigned notes the state agency medical consultants referenced an opinion from Dr. Johnson dated August 18, 2008, and indicated Dr. Johnson subsequently ordered two epidural steroid injections. Tr. at 375, 446. However, the only records from Dr. Johnson that appear in the transcript are treatment notes dated June 16, 2009, and July 1, 2009; an operative report dated February 5, 2008; and cervical MRIs dated December 5, 2007, and February 10, 2009. *See* Tr. at 332–39. None of these records reflect Dr. Johnson ordering Plaintiff to undergo epidural steroid injections. *See id.* Because the state agency medical consultants referenced records from Dr. Johnson that do not appear in the transcript and because Dr. Johnson likely examined Plaintiff both before and after he performed the anterior cervical discectomy and interbody fusion at C5-6, it appears that part of Dr. Johnson's records were omitted from the transcript. Based on the evidence before this court, is unclear whether the ALJ had access to additional evidence from Dr. Johnson or merely relied upon the state agency consultants' summaries of Dr. Johnson's opinion. Nevertheless, the ALJ's finding that Plaintiff received no medical treatment between February 2008 and February 2009 appears incorrect.

The ALJ also erred in factoring into the credibility assessment Plaintiff's failure to follow recommendations from his medical providers. ALJs are prohibited from drawing negative inferences about a claimant's credibility without considering the claimant's reasons for noncompliance.[5] SSR 96-7p. The record indicated Plaintiff declined

---

[5] Some explanations that may provide insight into the claimant's credibility include the following: that the claimant has structured his daily activities so as to minimize

recommended medical treatment because of financial hardship on several occasions. *See* Tr. at 280 (declined repeat epidural steroid injection for financial reasons), 333 (had difficulty finding another surgeon who would see him as a second opinion with an attorney case and letter of protection), 454 (was unable to afford to see a neurologist). An ALJ cannot deny a claimant benefits based on the claimant's failure to obtain treatment he cannot afford. *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984). However, here, the ALJ used Plaintiff's failure to follow prescribed treatment that he could not afford as one reason to discount his credibility. If an ALJ bases a decision to deny benefits to a claimant on the claimant's medical noncompliance, the ALJ must make a particularized inquiry and the burden of producing evidence concerning unjustified noncompliance lies with the agency. *Preston v. Heckler*, 769 F.2d 988, 990 (4th Cir. 1985). The ALJ must establish by substantial evidence that the claimant's impairment "is reasonably remediable by the particular individual involved, given . . . her social and psychological situation" and that the claimant lacks good cause for failing to follow prescribed treatment. *Id.*, *citing Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir. 1984), *Gordon*, 725 F.2d at 236. The ALJ made no particularized inquiry and produced no evidence concerning unjustified noncompliance. Therefore, the ALJ erred in relying on Plaintiff's noncompliance to support his credibility finding.

---

symptoms, that the claimant's symptoms are relieved with over-the-counter medications, that the claimant avoids taking medications because of the side effects, that the claimant is unable to afford treatment and lacks access to free or low-cost services, that the individual has been advised by medical sources that no further effective treatment can be undertaken, and that medical treatment is contrary to the teaching and tenants of the claimant's religion. SSR 96-7p.

In light of all of the foregoing, the undersigned recommends the court find the Commissioner did not adequately assess Plaintiff's allegations of pain in accordance with the provisions of 20 C.F.R. § 404.1529 and SSR 96-7p.

3.    State Agency Consultants' Opinions

On December 30, 2009, Angela Saito, M.D. ("Dr. Saito"), completed a physical residual functional capacity ("RFC") assessment in which she indicated Plaintiff had the following limitations: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; limit reaching in all directions; and avoid all exposure to hazards. Tr. at 369–76.

On July 1, 2010, state agency medical consultant Tom Brown, M.D. ("Dr. Brown"), completed a  physical RFC assessment that included the following limitations: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally push and/or pull with the left upper extremity; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; never reach overhead with the bilateral upper extremities; occasionally reach with the left upper extremity; frequently reach with the right upper extremity; and avoid even moderate exposure to hazards. Tr. at 440–47.

Plaintiff argues the decisions of the ALJ and Appeals Council to accord significant weight to the opinions of the state agency consultants were not supported by substantial

evidence. [ECF No. 13 at 11]. He maintains the consultants' opinions were inconsistent with Dr. Richardson's opinion and were rendered without the benefit of the entire record. *Id.*

The Commissioner argues the ALJ was not required to accept the treating physician's opinion over those of the state agency consultants. [ECF No. 15 at 16].

ALJs must consider findings and other opinions of state agency medical consultants as opinion evidence and must evaluate them based on the factors required for evaluating opinion evidence under 20 C.F.R. § 404.1527(a)–(d). 20 C.F.R. § 404.1527(e)(2)(i), (ii). If the Appeals Council grants review, it must follow the same rules for considering opinion evidence as the ALJs. 20 C.F.R. § 404.1527(e)(3). "Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p.

The opinions of state agency medical consultants "can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence, including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion" provided by the State agency consultant. *Id.* However, in some circumstances, opinions from state agency medical consultants may be entitled to greater weight than the opinions of a claimant's treating

medical source. *Id.* A state agency medical consultant's opinion may be entitled to greater weight than a treating physician's opinion if it "is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.*

The ALJ indicated he gave some weight to the state agency medical consultants' opinions because they were "supported by the objective medical evidence of record." Tr. at 35. However, he concluded the consultants "assessed less pronounced limitations than those found" in his decision. *Id.*

Although the Appeals Council did not specify the weight it accorded to the opinions of the state agency medical consultants, it did indicate the consultants' opinions were inconsistent with Dr. Richardson's opinion. *See* Tr. at 10.

The undersigned recommends the court find the Appeals Council did not appropriately weigh the opinions of the state agency medical consultants. Because the Appeals Council granted review in the case, it was required to weigh the opinion evidence and, thus, neglected its duty under the provisions set forth in 20 C.F.R. § 404.1527(a)–(d). The Appeals Council briefly addressed the consistency factor in noting that the opinions of the state agency consultants differed from that of Dr. Richardson, but it did not address any of the other factors. The Appeals Council also erred to the extent that it conferred more weight on the state agency consultants' opinions than those of Plaintiff's treating physician because the state agency consultants' opinions were not based on a review of the complete case record and were not supported by a specialist's

opinion that contradicted the treating physician's opinion. *See* 96-6p. Although Dr. Saito referenced Dr. Johnson's opinion, she did not rely on it, but only gave it "some weight" because of perceived inconsistencies. *See* Tr. at 375. Dr. Brown also considered Dr. Johnson's opinion, but gave it "less weight" based on additional evidence in the record. Tr. at 446. Furthermore, neither Dr. Saito nor Dr. Brown reviewed the opinion of Dr. Richardson, a specialist in treating pain disorders. *See* Tr. at 474.

The Appeals Council did not indicate the weight conferred on the state agency consultants' opinions as required by SSR 96-6p. Even if we are to assume the Appeals Council adopted the same weight accorded to the state agency consultants' opinions as the ALJ, the ALJ's indication that he gave "some weight" and his explanation for the weight he conferred were inadequate in light of his errors in assessing the opinion evidence. Therefore, the undersigned recommends the court find the Appeals Council did not properly consider the state agency consultants' opinions in light of the other evidence of record and in accordance with 20 C.F.R. § 404.1527(a)–(d) and SSR 96-6p.

### 4.    VE Opinion

The VE identified jobs in response to the hypothetical question that set forth the same limitations identified by the ALJ in the RFC assessment and adopted by the Appeals Council. *Compare* Tr. at 9–10 and 32, *with* Tr. at 71–72. However, the VE also indicated that an individual who would miss up to four days of work per month would be unable to perform any jobs in the national economy. *See* Tr. at 72.

Plaintiff argues the ALJ erred in finding that he was capable of working based on the VE's answer to the ALJ's first hypothetical question, which did not include all of

Plaintiff's impairments. [ECF No. 13 at 14]. She further maintains that the ALJ should have been persuaded by the VE's indication that missing more than one day of work per month would likely preclude employment. *Id.*

The Commissioner argues the ALJ was only required to submit to the VE those limitations he found to be credibly established. [ECF No. 15 at 18]. She maintains the Appeals Council relied upon the VE's testimony to find that Plaintiff was able to perform simple, light jobs that accommodated his impairments. *Id.* at 19.

At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. *Walls*, 296 F.3d at 290. The purpose of bringing in a VE is to assist the ALJ in meeting this requirement. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). For a VE's opinion to be relevant, "it must be based upon a consideration of all other evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Johnson*, 434 F.3d at 659 (quoting *Walker*, 889 F.2d at 50); *see also English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993). An ALJ has discretion in framing hypothetical questions as long as they are supported by substantial evidence in the record, but the VE's testimony cannot constitute substantial evidence in support of the Commissioner's decision if the hypothesis fails to conform to the facts. *See Swaim v. Califano*, 599 F.2d 1309, 1312 (4th Cir. 1979).

The ALJ indicated "[b]ased on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional

capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. at 38.

The Appeals Council indicated it found "the vocational expert testimony to be persuasive and that the jobs cited by the vocational expert exist in significant number in the national economy." Tr. at 10. It also adopted the ALJ's finding that the VE's testimony was consistent with the information contained in the *DOT* and supported a finding that Plaintiff was not disabled within the framework of Medical-Vocational Rule 202.21. *Id.*

Because the undersigned has recommended findings that the Commissioner did not properly consider all relevant factors in assessing Plaintiff's credibility or the opinion evidence from Plaintiff's treating physician and the state agency medical consultants, the undersigned is unable to conclude that the limitations set forth in the hypothetical question that yielded jobs considered the entire record or accurately reflected all of Plaintiff's impairments. *See Johnson*, 434 F.3d at 659. Because the ALJ must reconsider the opinion evidence and Plaintiff's credibility on remand, the undersigned recommends he obtain additional vocational testimony, as well.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the

Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

   IT IS SO RECOMMENDED.

July 14, 2015          Shiva V. Hodges
Columbia, South Carolina      United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).